# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| PHILLIP BROOKER, as next friend of W.B, a minor,<br><br>Plaintiff<br><br>v.<br><br>WAYNE COUNTY SCHOOL DISTRICT, et al.,<br><br>Defendants. | 2:25-CV-93 |

**ORDER**

Before the Court are three motions to dismiss: the first filed by Defendant Timothy Aron Osburn, dkt. no. 10, the second filed by Defendant Wayne County School District, dkt. no. 11, and the third filed by Defendant James Brett McDaniel, dkt. no. 12. The motions have been fully briefed and are ripe for review. Dkt. Nos. 10, 11, 12, 19, 23, 25, 26. The Court held oral argument on the three motions on July 13, 2025. Dkt. No. 29. For the reasons stated below, the motions, dkt. nos. 10, 11, 12, are **GRANTED**.

**BACKGROUND**

**I. Factual Background**

This case arises from an incident which occurred at Wayne County High School in Jesup, Georgia, on April 29, 2024: the

culmination of a dispute between two minor students, W.B and J.D. See Dkt. No. 1 ¶¶ 40-44.

Plaintiff brings this case on behalf of his minor son, W.B. Dkt. No. 1 ¶ 1. During the events giving rise to this case, W.B. was a ninth-grade student at Wayne County High School. Id. ¶ 2. W.B. has cystic fibrosis, a slight build, and a history of behavioral issues. Id. ¶ 5. Plaintiff alleges that Wayne County High School officials and the Wayne County School District (hereinafter the "School District") were aware of W.B.'s disabilities. Id. ¶ 63. When he was in middle school, W.B. allegedly had an individualized education plan ("IEP"), and W.B.'s parents believed that he would continue to have the IEP upon entering high school. Id. ¶¶ 62, 64. J.D., himself a minor, was one of W.B.'s fellow students at Wayne County High School and had a history of behavioral issues, as well. Id. ¶¶ 6, 41.

On Wednesday, April 24, 2024, J.D. allegedly approached W.B. and insisted that W.B. fight a female student. Id. ¶ 41. W.B. reportedly refused to do so. Id. ¶ 42. J.D. then threatened to "beat up" W.B. Id. In response to these statements, W.B. stayed home from school for the next two school days. Id. ¶ 43. The following Monday, April 29, 2024, W.B. returned to school. Id. ¶ 44.

The morning of April 29, 2024, at least one teacher was allegedly made aware that J.D. was going to "beat up" W.B. Id.

¶ 45. According to Plaintiff's complaint, Defendant Principal James McDaniel (hereinafter "Principal McDaniel") and School Resource Officer Timothy Osburn (hereinafter "Officer Osburn") were aware of the impending altercation and that the altercation would occur in the Wayne County High School cafeteria. Id. ¶ 46. In preparation for the fight, Principal McDaniel and Officer Osburn allegedly stationed themselves in the cafeteria. Id. ¶ 47.

A video attached to Plaintiff's complaint shows a clip of what happened next. See Video Exhibit C.[1] In the video, W.B. and J.D. appear to assume what Plaintiff describes as "confrontational stances," i.e., W.B. and J.D. are facing each other and W.B. is raising and lowering his fisted hands. Id. at 00:00–00:09; Dkt. No. 1 ¶ 49. J.D. then swings his right fist, attempting to make contact with W.B, but the blow does not land. Video at 00:00–00:10. J.D. then grabs W.B. around his torso, picks him up, and throws him to the ground. Id. at 00:10–00:13.

Much of the complaint concerns the actions of Principal McDaniel and Officer Osburn in relation to the confrontation. See, e.g., Dkt. No. 1 ¶¶ 47–52. Plaintiff alleges that, prior to the altercation, Principal McDaniel and Officer Osburn were stationed in the cafeteria. Id. ¶ 47. In the video, Principal McDaniel can be seen walking toward the altercation with his hands in his

[1] Video Exhibit C was submitted to the Court via a flash drive.

pockets just before and after J.D.'s initial contact attempt at W.B. Video at 00:09-00:11. Officer Osburn is depicted, first, walking towards the altercation alongside Principal McDaniel, and then running toward the altercation when J.D. first attempts to strike W.B. Id. at 00:09-00:12. Just after J.D. throws W.B. to the ground, Officer Osburn appears to restrain J.D. Id. at 00:13-00:15, 00:19-00:23. After J.D. is initially restrained and while W.B. is on the ground, Principal McDaniel approaches W.B. and appears to observe him. Id. at 00:15-00:26. J.D. then appears to be led away by Officer Osburn. Id. at 00:23-00:26.

After the altercation, W.B. was taken to Wayne Memorial Hospital by ambulance. Dkt. No. 1 ¶ 59. W.B.'s father, Plaintiff in the instant action, allegedly learned of the incident and W.B.'s subsequent injury from another parent at the school. Id. Principal McDaniel allegedly did not reach out to Plaintiff until about one hour later as Plaintiff was on the way to the hospital. Id. ¶ 60. W.B. was later life-flighted to a medical facility where it was determined that he suffered multiple hematomas and a brain aneurism. Id. ¶ 61. He subsequently underwent brain surgery and other procedures. Id.

Plaintiff attached to his complaint an agreement between the Wayne County School District and the Chief of Police of the City of Jesup under which the Jesup Police Department would assign a school resource officer to a subset of the Wayne County School

District premises. Dkt. No. 1 ¶ 54; Dkt. No 1-3. Plaintiff alleges that the actions of Officer Osburn violate some of the terms of that agreement. See Dkt. No. 1 ¶ 54.

Plaintiff also alleges that the Wayne County School District, Principal McDaniel, and Officer Osburn were aware of extensive bullying and harassment on the Wayne County High School campus. Id. ¶¶ 69–70. Plaintiff attaches a document to his complaint which he alleges is the Wayne County Board of Education policy ("Board Policy: JCDAG") defining and prohibiting bullying, and he alleges that the School District, Principal McDaniel, and Officer Osburn were aware of that policy. Id. ¶ 73; Dkt. No. 1-4 at 2–3. Plaintiff also alleges that Wayne County High School had several instances of "aggressive behavior, fights, and batteries" on its campus, in addition to reports of criminal behavior. Dkt. No. 1 ¶¶ 74–76. Plaintiff finally alleges that the School District maintained a "Code of Student Conduct" defining bullying, battery, disorderly conduct, fighting, and intimidation. Id. ¶ 77; Dkt. No. 1-7 at 2–19. Plaintiff alleges that, despite that code of student conduct, such behavior was allowed to exist on the Wayne County High School campus. Dkt. No. 1 ¶ 77.

**II. Procedural Background**

Plaintiff filed his complaint in this Court on July 18, 2025. Dkt. No. 1. In his complaint, Plaintiff brings the following substantive claims: "Violation of Section 504 of the

Rehabilitation Act of 1973 and Violation of Title II of the Americans with Disabilities Act" against the School District, Principal McDaniel, and Officer Osburn (Count One); "Violation of 42 U.S.C. § 1983" against the School District (Count Two); "Violation of Individuals with Disabilities Education Act" against the School District (Count Three); "Substantive Due Process Violation" against Principal McDaniel and Officer Osburn (Count Four); and negligence against Principal McDaniel (Count Five). Id. ¶¶ 81-117. In Count Seven,[2] Plaintiff asserts a derivative claim for attorney's fees and expenses under 42 U.S.C. § 1988. Id. ¶ 118.[3] Additionally, Plaintiff seeks special, compensatory, and general damages as relief. Id. at 36-38. Plaintiff expressly disclaims any relief other than damages in response to the motions to dismiss. Dkt. No. 19 at 18.

Defendants each filed a motion to dismiss. Dkt. No. 10 (Officer Osburn); Dkt. No. 11 (Wayne County School District); Dkt. No. 12 (Officer McDaniel). Plaintiff filed a single response addressing each motion. Dkt. No. 19. Defendants each filed a reply.

[2] Though Plaintiff's complaint contains a Count Five and a Count Seven, dkt. no. 1 ¶¶ 110-18, there is no Count Six.

[3] Attorney's fees are properly characterized as derivative of substantive claims and not standalone claims for relief. See Bobo's Drugs, Inc. v. Total Pharm. Supply, Inc., No. 8:17-CV-2553-T-30AAS, 2018 WL 2688786, at *1 (M.D. Fla. Feb. 9, 2018) (agreeing with the plaintiff's argument that "attorney's fees are simply types of relief [p]laintiff seeks for the claim, not the claim itself").

Dkt. No. 23 (Principal Osburn); Dkt. No. 25 (Principal McDaniel); Dkt. No. 26 (Wayne County School District). The Court held oral argument on July 13, 2026. Dkt. No. 29.

**LEGAL STANDARD**

**A. Motions to Dismiss Under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the alleged facts allow the Court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

In evaluating a motion to dismiss, the Court must accept the

facts alleged in the complaint as true and "construe them in the light most favorable to the plaintiffs." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citations omitted). The Court need not accept as true allegations that merely declare that the elements of the claim are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations adopted).

**B. Applicability of Video Material Attached to Complaint**

With respect to material attached to the complaint and motions to dismiss, the "incorporation-by-reference" doctrine allows the Court to consider evidence extrinsic to the complaint itself when

analyzing a motion to dismiss. Johnson v. City of Atlanta, 107 F.4th 1292, 1298-99 (11th. Cir. 2024). Under certain circumstances, this doctrine allows the Court to consider evidence either attached to the pleadings or attached to a motion to dismiss. Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Julmist v. Prime Ins. Co., 92 F.4th 1008, 1016 (11th Cir. 2024) (determining the district court appropriately considered an insurance policy attached to the motion to dismiss)). An exhibit attached to the pleadings or a motion to dismiss may be considered without converting a motion to dismiss into a motion for summary judgment "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Id. at 1300.

As applicable here, the Court may consider the altercation footage attached as an exhibit to Plaintiff's complaint. Video Exhibit C. This footage is central to Plaintiff's claims, as the footage depicts the altercation forming the basis of this action. Dkt. No. 1 ¶¶ 8, 44-52. Neither party challenges the authenticity of the footage. See Johnson, 107 F.4th at 1301 (finding that the authenticity of attached video footage was not challenged when the opposing party did not argue that the videos were altered or did not depict what actually happened).

When conducting the motion to dismiss analysis with attached video evidence, the Court views factual allegations in the second

amended complaint as true to the extent they are not contradicted by the video evidence. Johnson v. Belcher, 564 F. Supp. 3d 1334, 1340–41 (N.D. Ga. 2021) (citations omitted); see also Kass v. New York, 864 F.3d 200, 206 (2d Cir. 2017) ("[W]hen the record includes a video that the parties concede is authentic and accurate, . . . [the court] view[s] the allegations of the complaint as true only 'to the extent that they are not contradicted by video evidence.'" (quoting Garcia v. Does, 779 F.3d 84, 88 (2d Cir. 2015))).

**DISCUSSION**

Defendants submitted separate motions to dismiss, arguing for various reasons that all of Plaintiff's claims are due to be dismissed under Federal Rule of Civil Procedure 12(b)(6). See generally Dkt. Nos. 11, 12, 13. Defendants arguments can be broadly organized into two categories: (1) arguments relating to Plaintiff's statutory claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") and (2) arguments related to Plaintiff's constitutional claims. Id. Both categories of arguments are discussed in that sequence below. Preliminarily, however, the Court addresses claims conceded by Plaintiff's counsel at oral argument.

## I. Conceded Claims

At the motions hearing, in response to questioning by the Court, Plaintiff's counsel conceded that Plaintiff could not succeed on his claim under the Individuals with Disabilities

Education Act ("IDEA") against the School District and that he could not succeed on his ADA claims against Principal McDaniel and Officer Osburn. Plaintiff's counsel was correct to do so. In his briefing, Plaintiff has disclaimed any damages other than monetary damages: "To the extent Plaintiff's Complaint appears to seek relief other than damages, such relief is disclaimed [and] any claims should be considered as such." Dkt. No. 19 at 18. Compensatory damages, as a traditional tort remedy, are not available under the IDEA. See Ortega v. Bibb Cnty. Sch. Dist., 397 F.3d 1321, 1325–36 (11th Cir. 2005).

As to his ADA and Section 504 RA claims against Principal McDaniel and Officer Osburn, those claims fail because "there is no individual capacity liability under the ADA." Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2nd Cir. 2001)); Berkery v. Kaplan, 518 F. App'x 813, 814–15 (11th Cir. 2013) (same with respect to Section 504 of the RA). Plaintiff acknowledged this limitation in his response briefing. Dkt. No. 19 at 9, 17 ("Plaintiff concedes that his claims under the ADA cannot be asserted against the Individual Defendants.").

Therefore, the School District's motion to dismiss, dkt. no. 11, is **GRANTED** as to Count Three, and Officer Osburn's and Principal McDaniel's motions to dismiss, dkt. nos. 10, 12, are **GRANTED** as to Count One.

## II. Count One: Section 504 and ADA Claims

Plaintiff asserts a claim under Title II of the ADA and Section 504 of the Rehabilitation Act against the School District. Dkt. No. 1 ¶¶ 81–90. Under ADA Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504, which is almost identical, provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a); Silberman v. Mia. Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) (noting that Section 504 is "pretty much identical" to ADA § 12132). Because the two statutes bear textual similarities, "'the same standards govern' claims under both," and the Court is to "'re[ly] on cases construing [Title II and § 504] interchangeably.'" Silberman, 927 F.3d at 1133 (alterations in original) (quoting T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., 610 F.3d 588, 604 (11th Cir. 2010)). In other words, whatever the Eleventh Circuit has said "about Title II goes for § 504, and vice versa." Id. at 1133-34.

The School District argues that Plaintiff's claim against it

under Title II of the ADA and Section 504 of the RA should be dismissed for two reasons: (1) because Plaintiff has not exhausted administrative remedies under the IDEA and (2) Plaintiff has not pled facts sufficient to state a claim under those statutes. Dkt. No. 11 at 14-18.

### A. Plaintiff was not required to exhaust administrative remedies under the IDEA.

First, Plaintiff seeks relief that is not available under the IDEA. Again, Plaintiff has disclaimed any damages other than compensatory damages: "To the extent Plaintiff's Complaint appears to seek relief other than damages, such relief is disclaimed [and] any claims should be considered as such." Dkt. No. 19 at 18. Compensatory damages, as a traditional tort remedy, are not available under the IDEA. See Ortega, 397 F.3d at 1325-36. Therefore, Plaintiff's ADA and Section 504 claims are not barred due to his failure to seek administrative remedies under the IDEA. Luna Perez v. Sturgis Pub. Schs., 598 U.S. 142, 147-48 (2023) (holding that the IDEA's bar to relief unless certain administrative remedies are first exhausted does not apply "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide"); Powell v. Sch. Bd. of Volusia Cnty., Fla., 86 F.4th 881, 885 (11th Cir. 2023) ("[A]ppellants unambiguously sought compensatory *monetary* damages under the ADA and not compensatory

education under the IDEA. Consequently, in light of Perez, the Appellants should have been allowed to proceed with their claims regardless of the IDEA's exhaustion requirements." (emphasis in original)). Therefore, Plaintiff was not required to exhaust administrative remedies under the IDEA to pursue his ADA and RA claims, and the School District's argument for dismissal does not succeed on that ground.

### B. Plaintiff has not plausibly alleged a violation under the ADA and Section 504 of the RA.

Next, the School District argues that Plaintiff fails to state a claim under the ADA and Section 504 because he failed to allege sufficient facts as to the essential elements of his claim. Dkt. No. 11 at 15–18.

The parties appear to agree that the standard set for Title IX cases in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), should govern Plaintiff's Title II ADA and Section 504 RA claims. Dkt. No. 11 at 16–17; Dkt. No. 19 at 13–14. In Davis, the Supreme Court answered the question of whether a private right of action against a school board existed under Title IX in cases of student-on-student sexual harassment:

> We conclude that it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities. Moreover, we conclude that such an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.

526 U.S. at 633. Courts applying the Davis standard to ADA and Section 504 claims have required plaintiffs to show the following five elements in peer-to-peer harassment claims:

> (1) the plaintiff is an individual with a disability,
>
> (2) he or she was harassed based on that disability,
>
> (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment,
>
> (4) the defendant knew about the harassment, and
>
> (5) the defendant was deliberately indifferent to the harassment.

Long v. Murray Cnty. Sch. Dist., 522 F. App'x 576, 577 n.1 (11th Cir. 2013) (quoting S.S. v. E. Ky. Univ., 532 F.3d 445, 454 (6th Cir. 2008)) (noting that, because the parties agreed the Davis standard "should apply to the § 504 and ADA claims," the district court was correct in requiring the plaintiffs to show those elements); see also, e.g., Iaciofano v. Sch. Bd. of Broward Cnty., Fla., No. 16-CV-60963, 2016 WL 4216326, at *2 (S.D. Fla. Aug. 10, 2016) (analyzing the same elements when the parties agreed the Davis standard applied).

The School District argues that Plaintiff has failed to plausibly allege sufficient facts as to all elements except the first, that W.B. is an individual with a disability. Dkt. No. 11 at 15–18. Specifically, the School District argues that Plaintiff has failed to allege (1) a correlation between W.B.'s disability

and the alleged bullying, (2) that any alleged disability harassment was sufficiently severe to create an abusive educational environment, and (3) that an appropriate person within the School District was aware of, and deliberately indifferent to, severe and pervasive disability harassment. Id.

**1. Plaintiff has not plausibly alleged a nexus between W.B.'s disability and the alleged harassment.**

To support its argument that Plaintiff has not alleged sufficient facts as to the second Davis factor, the School District points to the paragraphs in Plaintiff's complaint that allege that W.B. was attacked because he refused to fight a female student, not because of his disability. Dkt. No. 11 at 17–18 (citing Dkt. No. 1 ¶¶ 5, 41–42, 44). Plaintiff responds that the complaint adequately alleges that the harassment was connected to his disability because, he argues, J.D. challenged W.B. to fight a female student *because* W.B.'s disability rendered him small and weak. Dkt. No. 19 at 14 (citing Dkt. No. 1 ¶¶ 5, 41–42). The portions of the complaint cited by Plaintiff, however, do not specifically allege this connection. Dkt. No. 1 ¶¶ 5, 41–42. The complaint, instead, contains a conclusory allegation in a separate paragraph stating: "Bullying and disability harassment can be, and in this case is, a form of disability discrimination, which is illegal." Dkt. No. 1 ¶ 84.

The School District has the winning argument. The complaint

is devoid of any specific allegations that the incident of harassment itself was due to W.B.'s disability, and, instead, provides conclusory allegations that W.B. suffered disability harassment, without alleging specific facts connecting the harassment to his disability. Dkt. No. 1 ¶¶ 5, 41-42, 84. Alleging that the harassment W.B. allegedly suffered was illegal disability harassment, id. ¶ 84, is not sufficient to state a claim, as this is a legal conclusion that is not entitled to a presumption of truth, see Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555). Without specific facts supporting the inference that W.B.'s alleged harassment was due to his disability, Plaintiff has failed to plausibly allege this element of the Davis standard as applied to ADA and Section 504 claims. See Long, 522 F. App'x at 577 n.1 (quoting S.S., 532 F.3d at 454) (listing the Davis elements as applied to ADA and Section 504 claims).

**2. Plaintiff has not plausibly alleged severe and pervasive harassment constituting an ADA or Section 504 violation.**

Next, the School District notes that, according to Plaintiff's complaint, the only disruption to W.B.'s education was missing two days of school. Dkt. No. 11 at 18; see also Dkt. No. 1 ¶ 43. This, the School District argues, is insufficient to show a deprivation of an educational opportunity when applying the Davis elements. Dkt. No. 11 at 18. The School District points to Eleventh Circuit precedent granting summary judgment on a Title IX claim

under the Davis standard. See Hawkins v. Sarasota Cnty. Sch. Bd., 322 F.3d 1279, 1289 (11th Cir. 2003).

In Hawkins, the Eleventh Circuit held that the alleged harassment was not sufficiently pervasive where the evidence showed that the alleged victims suffered no decline in grades, no change in demeanor, and "faked being sick four or five times" in order to not go to school. Id. Plaintiff responds by citing the more recent case of Hill v. Cundiff, 797 F.3d 948 (11th Cir. 2015), and argues that a sufficiently egregious single incident of peer-on-peer harassment can satisfy the severe and pervasive component of the Davis standard. Dkt. No. 19 at 15.

In Hill, the Eleventh Circuit found that a single instance of harassment *could* be sufficiently "severe, pervasive, and objectively offensive" when the instance of harassment was a rape preceded by the alleged attacker propositioning the victim for two weeks prior to the incident and the opportunity for the rape was orchestrated by school officials in a "botched rape-bait scheme." Hill, 797 F.3d at 973. The court concluded that a jury could find from those facts that the victim's rape was "the culmination of 'a continuous series of events' . . . and was therefore pervasive." Id. (internal citations omitted) (quoting Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1298 (11th Cir. 2007)). The court in Hill noted that the facts were "highly unique and extreme" and differed "markedly from the 'rarely actionable,

theoretical single incident mentioned in Davis.'" Id. (quoting Williams, 477 F.3d at 1298). The court also indicated that the situation in Hill was unique due, in part, to the effective participation of the school administrators in the scheme. Id. at 972.

The facts of this case as pleaded are more like the alleged harassment in Hawkins where the students' education was not severely disrupted as a matter of law. Indeed, in that case, the students allegedly missed four or five days of school, while W.B. is alleged to have missed just two days. Hawkins, 322 F.3d at 1289; Dkt. No. 1 ¶ 43 (alleging that due to the purported threats W.B. stayed home from school for two school days). And the alleged faculty involvement in this case was unlike the participation of the teachers in Hill. In Hill, the teachers allegedly intentionally orchestrated the conditions for the harassment. 797 F.3d at 972. Here, Principal McDaniel is merely alleged to have stood by while the bullying occurred and to have been "fine with a Fight Club culture at Wayne County High School" and "with the prospect of W.B. taking a few punches." Dkt. No. 1 ¶¶ 106-09. This is not the kind of alleged staff involvement that would bring the purported harassment outside of the "rarely actionable, theoretical single incident mentioned in Davis." Hill, 797 F.3d at 973 (quoting Williams, 477 F.3d at 1298). Therefore, Plaintiff has not sufficiently alleged that the alleged harassment was so severe and

pervasive to constitute a violation under the ADA or Section 504.

### 3. Plaintiff has not plausibly alleged that school officials acted with deliberate indifference.

The School District next argues that the complaint lacks allegations that "an appropriate person within Defendant [School District] was aware of and deliberately indifferent to W.B.'s disability-based harassment that was severe or pervasive," alluding to the final Davis elements. Dkt. No. 11 at 18. The School District does not, however, cite any specific portion of the complaint to support this. Id. Plaintiff responds that these elements are satisfied and similarly does not cite any specific portion of the complaint. Dkt. No. 19 at 16.

Applying the Davis elements to Plaintiff's ADA and Section 504 claim, Plaintiff must show that an appropriate person knew about the harassment and that the school district acted with deliberate indifference. Long, 522 F. App'x at 577 n.1 (listing Davis elements as applied to ADA and Section 504 claims (quoting S.S., 532 F.3d at 454)); Hill, 797 F.3d at 969–70 (listing the same Davis elements as applied to a Title IX claim (citing Williams, 477 F.3d at 1292–98)).

As to whether an appropriate person knew about the alleged harassment, the complaint contains allegations that (1) Principal McDaniel was aware of the impending altercation, (2) that Principal McDaniel was aware the altercation would occur in the cafeteria,

and (3) that Principal McDaniel and Officer Osburn stationed themselves in the cafeteria in preparation for the attack. Id. ¶¶ 46-47. Therefore, Plaintiff has plausibly alleged that an appropriate person knew about the alleged harassment. See Hill, 797 F.3d at 971 (defendant principal was an appropriate person whose actual knowledge could be imputed to the defendant school board under the Davis standard).

As to deliberate indifference, "funding recipients are deliberately indifferent 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" Hill, 797 F.3d at 973 (citing Davis, 526 U.S. at 648). Plaintiff's complaint paints a picture of a passive response by the administration.

Even drawing reasonable inferences in Plaintiff's favor, this alleged response is not "clearly unreasonable" in light of the circumstances as described by Plaintiff. Hill, 797 F.3d at 973 (citing Davis, 526 U.S. at 648). Prior to a possible altercation, it is reasonable for a school principal and resource officer to station themselves nearby. Indeed, in the video attached to Plaintiff's complaint, Principal McDaniel and Officer Osburn are depicted approaching the altercation within seconds after J.D. and W.D. assumed confrontational stances. See Video Exhibit C. Therefore, because Plaintiff has not plausibly alleged that the administration's response to the alleged harassment, or lack

thereof, was clearly unreasonable in light of the circumstances described, Plaintiff has failed to plead the final Davis element. See Long, 522 F. App'x at 577 n.1.

Therefore, taking all Davis elements together, it is clear that Plaintiff has not plausibly alleged that an appropriate person was aware and deliberately indifferent to severe and pervasive harassment connected to W.B.'s disability. Thus, Plaintiff has failed to state a claim for peer-on-peer harassment under the ADA and Section 504.

**C. The Court Declines to Grant Plaintiff Leave to Amend**

Plaintiff informally requests leave to amend his complaint in his response brief. Dkt. No. 19 ¶ 18. It is within the Court's discretion to grant Plaintiff leave to amend, even where such leave was not formally requested. Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC, 7 F.4th 989, 1000 (11th Cir. 2021) (citing Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc)). Here, the operative pleading before the Court is the original complaint which has not been amended. Dkt. No. 1.

Generally, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this leave need not be given where the amendment "would prejudice the defendant, follows undue delays, or is futile." Ctr. for a Sustainable Coast v. Nat'l Park Serv., 454 F. Supp. 3d 1347, 1355-56 (S.D. Ga. 2020)

(quoting Lacy v. BP P.L.C., 723 F. App'x 713, 715 (11th Cir. 2018)). Leave to amend is futile "when the proposed amended complaint would still be subject to dismissal." Id. (quoting Lacy, 723 F. App'x at 715).

Here, Plaintiff has stated that he does not want to be granted leave to amend if "additional allegations would just result in another round of motions to dismiss which is surely what would happen." Dkt. No. 19 at 18. Additionally, Plaintiff's counsel made representations at the July 13, 2026 motions hearing that, even if leave to amend were granted, he would not be able to plead additional factual material remedying the identified deficiencies.

Therefore, because leave to amend would be futile in this case as to Plaintiff's ADA and Section 504 claims, the School District's motion to dismiss, dkt. no. 11, is **GRANTED** as to Count One.

## III. Counts Two and Four: Plaintiff's Constitutional Claims

Defendants next seek dismissal of Plaintiff's Section 1983 claims against them. Dkt. No. 10 at 7-11; Dkt. No. 11 at 7-12; Dkt. No. 12 at 7-14. In Counts Two and Four, Plaintiff brings claims under Section 1983 alleging a violation of W.B.'s substantive due process rights pursuant to the Fourteenth Amendment of the U.S. Constitution. Dkt. No. 1 ¶¶ 91-99 (School District); id. ¶¶ 104-09 (individual Defendants); id. ¶¶ 9-10. Defendants address these counts by arguing that Plaintiff has

failed to state a claim for a substantive due process violation. See Dkt. No. 10 at 7–11; Dkt. No. 11 at 7–12; Dkt. No. 12 at 7–14. Principal McDaniel and Officer Osburn both additionally argue that the constitutional claims against them are barred by qualified immunity. Dkt. No. 12 at 13; Dkt. No. 23 at 6–8. The School District further argues that Plaintiff has failed to plead facts sufficient to establish a claim of municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). Dkt. No. 11 at 12.

To constitute a violation of an individual's substantive due process rights, conduct by a government actor must be "arbitrary or conscience shocking in a constitutional sense." Waddell v. Hendry Cnty. Sheriff's Off., 329 F.3d 1300, 1305 (11th Cir. 2003) (citation omitted); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). In general, substantive due process does not impose a duty on government officials to protect citizens from the actions of third parties. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195–97 (1989). In a non-custodial setting, deliberate indifference, without more, is rarely, if ever, sufficient to meet the arbitrary and conscience shocking standard. Hill, 797 F.3d at 980 ("This Court has held deliberate indifference is not, without more, a basis for finding substantive due process liability in cases arising in the school context."); L.S. ex rel. Hernandez v. Peterson, 982 F.3d 1323, 1330 (11th Cir.

2020) ("We doubt that deliberate indifference can ever be 'arbitrary' or 'conscience shocking' in a non-custodial setting."). Schoolchildren are not in a "custodial relationship with the state." Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1378 (11th Cir. 2002) (citing Wyke v. Polk County Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997)).

With respect to intentional actions by government actors, the Eleventh Circuit has recognized that excessive corporal punishment on the part of a high school educator can give rise to a substantive due process claim. Nix, 311 F.3d at 1378 (citing Neal v. Fulton Cnty. Bd. of Ed., 229 F.3d 1069, 1076 (11th Cir. 2000)). To allege that a student's substantive due process rights were violated by corporal punishment, "the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." Neal, 229 F.3d at 1075 (citations omitted). In Neal, the Eleventh Circuit found that a plaintiff student had adequately alleged a due process claim when he alleged that the defendant coach struck him in the eye with a weight-lock, destroying the eye. Id. at 1071, 1076.

In Hill, discussed previously with respect to the standard for peer-on-peer harassment, the Eleventh Circuit also found that the district court had properly granted summary judgment to the

defendant teacher's aide on a substantive due process claim when the plaintiff had not shown more than deliberate indifference on the part of school staff. 797 F.3d at 980. In that case, a fourteen-year-old eighth grade student had complained about sexual harassment by the alleged perpetrator, one of her fifteen-year-old classmates who had a prior history of sexual harassment against other students. Id. at 956, 961–62. The principal of the school had a "catch in the act" policy with respect to sexual harassment discipline. Id. at 957–58. Upon learning of the student's allegations, staff at the school set up a "sting" operation to catch the alleged perpetrator in the act of sexual harassment. Id. at 961–62. The student was then raped by the alleged perpetrator. Id. at 962–63. The Eleventh Circuit held that the district court properly granted summary judgment in favor of defendants and stated that the student's "effort to state a claim for a violation of her right to substantive due process fails." Id. at 980.

Similarly, in Peterson, the Eleventh Circuit found that the district court had properly dismissed the plaintiffs' substantive due process claim for failure to state a claim when the plaintiffs alleged that a school security guard knew about the danger of a school shooter, the security guard failed to stop the school shooter from entering, and the guard barred emergency responders from entering the building in the Parkland, Florida, school shooting. 982 F.3d at 1330–31. The court found that the plaintiffs

had not stated a substantive due process claim because split-second judgments on the part of defendants were required at the time of the incident, and plaintiffs had not alleged that the officials had acted with a "purpose to cause harm." Id. at 1331 ("When split-second judgments are required, an official's conduct will shock the conscience only when it stems from a 'purpose to cause harm.'" (quoting Waldron v. Spicher, 954 F.3d 1297, 1307 (11th Cir. 2020))). Additionally, the court found that, "absent intentional wrongdoing," the court could not find liability under the Due Process Clause for split-second decisions in response to violence. Id. While the court in Hernandez left open the possibility that "a non-custodial claim of deliberate indifference may be cognizable as a matter of substantive due process," it also expressed skepticism of such a finding: "We doubt that deliberate indifference can ever be 'arbitrary' or 'conscience shocking' in a non-custodial setting." Id. at 1330–31. "Indeed, in the public-school setting, we have allowed substantive-due-process claims to proceed only when they involved intentional, obviously excessive corporal punishment." Id.

In a more recent unpublished case, Rodney K. v. Mobile County Board of Education, the Eleventh Circuit affirmed the lower court's grant of summary judgment as to the plaintiff's substantive due process claims against the defendant coaches related to the "hazing" of high school athletes by older players. No. 22-11022,

2025 WL 3295850, at *1-4, 5-6 (11th Cir. 2025). The court found that there was no due process violation proven because there was no evidence that the coaches were personally involved in the assaults, and at most, the "[c]oaches knew about the incidents and did nothing." Id. at *5-6.

Plaintiff argues that he has sufficiently stated a substantive due process claim because he has alleged that Principal McDaniel and Officer Osburn were complicit in corporal punishment inflicted on their behalf, and the conduct portrayed in the attached video is arbitrary and conscience shocking. Dkt. No. 19 at 6-9, 17. But Plaintiff has not stated a constitutional violation based on the conduct of Principal McDaniel and Officer Osburn. At most, Plaintiff has pleaded that the individual Defendants were aware of the danger posed by J.D. and did not take affirmative steps to protect W.B. Dkt. No. 1 ¶¶ 46-47, 87, 106-09 (alleging that Principal McDaniel was "fine with a Fight Club culture at Wayne County High School" and "was fine with the prospect of W.B. taking a few punches"). Because the conduct that injured W.B. was inflicted by a fellow student, J.D., and the individual Defendants are not alleged to have actively participated in the attack in any way, Plaintiff has pleaded no more than deliberate indifference, especially in light of Hernandez and Hill.

As described more fully below, Counts Two and Four also fail for additional reasons: 1) Principal McDaniel and Officer Osburn

are entitled to qualified immunity, and 2) Plaintiff has not stated a municipal liability claim against the School District.

**A. Qualified Immunity: Principal McDaniel and Officer Osburn (Count Four)**

Principal McDaniel and Officer Osburn argue that the constitutional claims against them are barred by qualified immunity. Dkt. No. 12 at 13–14; Dkt. No. 23 at 7–9. Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). The purpose of the qualified immunity defense is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (internal quotation marks omitted) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

When a defendant asserts qualified immunity, district courts must first discern whether "the defendant was engaged in a discretionary function." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). Acts involve the exercise of actual discretion if they fall within the employee's job

responsibilities. Holloman, 370 F.3d at 1265–66 (citations omitted). If that is the case, the burden then "shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Id. at 1264 (citations omitted). At that point, Plaintiff must satisfy a two-part inquiry, establishing that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id. (citations omitted). This two-step inquiry may be conducted in whatever order the district court deems most appropriate for the case. Grider, 618 F.3d at 1254 (citations omitted).

Here, Plaintiff does not appear to contest, at least in the qualified immunity context, that Principal McDaniel and Officer Osburn were acting within the scope of their discretionary authority. Dkt. No. 19 at 8–9; see also Dkt. No. 1 ¶ 30 ("At all times relevant hereto, James Brett McDaniel acted in his individual and official capacities; worked within Wayne County []; was an agent/employee of the District; acted and failed to act within the scope, course, and authority of his employment."); Id. ¶ 32 (same with respect to Officer Osburn). Instead, Plaintiff argues that Principal McDaniel and Officer Osburn violated a clearly established constitutional right. Dkt. No. 19 at 8–9. For the same reasons that Plaintiff has not sufficiently alleged the violation of a constitutional right, Plaintiff has not carried his burden to establish that Principal McDaniel violated a clearly established

constitutional right. Grider, 618 F.3d at 1254. Even if Plaintiff were able to eventually make a case that corporal punishment by proxy *could* be a constitutional violation, he has not supplied sufficient authority showing that this was clearly established law at the time of the incident.

Therefore, because Plaintiff has not sufficiently alleged that the individual Defendants violated a clearly established constitutional right, Principal McDaniel's and Officer Osburn's respective motions to dismiss, dkt. nos. 10 and 12, are **GRANTED** as to Count Four.

### B. Count Two: Monell Liability

Next, the School District argues that Plaintiff has not pleaded sufficient facts to support a claim for constitutional liability against the School District based on a Monell theory of liability. See Monell, 436 U.S. at 694. "A municipality may not be held liable under section 1983 on a theory of respondent superior." Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1270–71 (11th Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378 (1989)). "A plaintiff seeking to impose liability on a municipality (school district) under section 1983 must identify a municipal 'policy' or 'custom' that caused a deprivation of federal rights." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997)). The Eleventh Circuit has defined both

"policy" and "custom" under this standard:

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is a practice that is so settled and permanent that it takes on the force of law.

Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479–80 (11th Cir.1991); Monell, 436 U.S. at 690–91).

In his briefing, Plaintiff does not address the Monell arguments made by the School District, but he desires to keep the possibility open: "Plaintiff has not asserted any claims against Defendant WCSD sounding in Monell liability. The Court should not preliminarily provide merits precluding relief to Defendant on such a claim in the event that facts arise during discovery that may support one." Dkt. No. 19 at 16. Plaintiff has also not identified a policymaker for the municipality or any official policy which allegedly violated his rights. See Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1126 (N.D. Ga. 2016) (noting that, while the Eleventh Circuit has found that school principals *can* act as final policymakers for purposes of Monell liability, "determining who is a final policymaker is a question of law, but it depends intensely on the facts of the case, and requires consideration of both positive law and local custom" (citing Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 193–94 (11th Cir. 2004))). The complaint appears to allege, at most,

a custom in that the school was "deliberately indifferent to ongoing acts of violence and student-on-student assaults on its premises." Dkt. No. 1 ¶¶ 74–76, 79. As evidence of this alleged custom, Plaintiff cites multiple incidents of bullying and criminal activity on the campus. Id. But, as previously stated, deliberate indifference rarely, if ever, amounts to a violation of a student's substantive due process rights and cannot be "without more, a basis for finding substantive due process liability in cases arising in the school context." Hill, 797 F.3d at 980 (citation omitted).

Therefore, Plaintiff has not sufficiently alleged a constitutional violation on behalf of the School District, and thus, the School District's motion to dismiss, dkt. no. 11, is **GRANTED** as to Count Two.

**IV. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim (Count Five).**

In Count Five, the remaining substantive count, Plaintiff brings a state law negligence claim against Principal McDaniel. Dkt. No. 1 ¶¶ 110–17. Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim when it has "dismissed all claims over which it has original jurisdiction." In determining whether to exercise jurisdiction under § 1367(c), the Court considers factors including "judicial economy, convenience, fairness to the parties, and whether all the claims

would be expected to be tried together." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725–26 (1966)).

Considering these factors, the Court declines to exercise jurisdiction over Plaintiff's state law claim. This decision is mindful of federal judicial resources and recognizes that "notions of fairness and comity would suggest that a case now composed of claims based entirely on state law should be tried in a state court." Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc., 953 F. Supp. 2d 1290, 1298 (S.D. Ga. 2013); see also Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (citations omitted)). Therefore, Count Five, dkt. no. 1 ¶¶ 110–17, is **DISMISSED without prejudice.**[4]

[4] "Where the district court declines to exercise supplemental jurisdiction over state claims in a case originally filed in federal court, the state claims should be dismissed without prejudice so that they may be refiled in the appropriate state court." McDuffie v. Broward Cnty., Fla., 654 F. App'x 408, 411 (11th Cir. 2016) (citing Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999)).

## CONCLUSION

For the reasons set forth in this Order, Defendants' motions to dismiss, dkt. nos. 10, 11, 12, are **GRANTED** as to Counts One, Two, Three, Four, and Seven. Therefore, Counts One, Two, Three, Four, and Seven[5] are **DISMISSED with prejudice.** Additionally, because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim—Count Five—that claim is **DISMISSED without prejudice.** The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 27th day of August, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

[5] As Count Seven for attorney's fees is derivative of Plaintiff's substantive claims, it is also dismissed as it cannot survive without an associated substantive claim. See, e.g., Beasley v. Georgia Dep't of Pub. Safety, No. 1:24-CV-4520-MLB, 2026 WL 656054, at *6 (N.D. Ga. Mar. 9, 2026).